UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                                    BKY #20-60145
                                                                          Chapter 12
Jeffrey Earl Johnson,

      Debtors.

SECOND MODIFIED CHAPTER 12 PLAN OF REORGANIZATION
DATED January 21, 2021

## PART 1: SUMMARY OF THE PLAN

This plan shall continue for a period of five years from its effective date. The property of the debtors is being valued, and the claim of each secured creditor is being treated as secured in the amount of the value of the property securing such claim. Costs of administration are being paid on the effective date of the plan unless otherwise agreed to or directed by the Court. Priority claims are being paid in full as allowed. The debtors will pay the Trustee no less than all disposable income, as that term is defined in 11 U.S.C. § 1225, for Trustee administration and distribution to unsecured creditors. The deficiency claims of all secured creditors will be treated as unsecured claims unless otherwise ordered by the Court.

## PART 2: DEFINITIONS

1. "Creditors" means all entities having a claim against the debtors.
2. "Secured Creditor" means a creditor with a lien or security interest in property of the debtors.
3. "Claim" means a timely filed claim which has been allowed by the Court or a secured claim which is dealt with in the plan whether or not a claim is filed.
4. "Effective Date" means the date on which the Order of Confirmation becomes final.
5. "Trustee" means the Chapter 12 Trustee.
6. "Disposable Income" means all income received by the debtors annually after deducting operating expenses, living expenses (salaries approved) and plan payments.

## PART 3: LIQUIDATION ANALYSIS

The debtors' net equity in property, after deducting the amounts of the secured claims and exemptions, is $16,366.24. In addition, the Debtor will provide a payment of $7,500.00 to unsecured creditors to satisfy the best interests of creditors test. General and priority unsecured creditors (but not including attorney's fees) will receive no less than $20,729.62 over the life of the Plan. The debtors' liquidation analysis is attached to this plan as Exhibit A.

## PART 4: DISPOSABLE INCOME

The debtors' projections of gross income, operating expenses, living expenses and plan payments indicate that they may have disposable income annually. For the term of this plan, all of the debtors' disposable income, regardless of the amount, will be paid to the Trustee for payment of cost of administration and distribution to unsecured creditors. All disposable income (future earnings not necessary for the continuation, preservation and operation of the farm and for the maintenance or support of the debtors and their dependents) for (three to five) years following the effective date, shall be submitted to the Trustee for distribution. All creditors with Part 9 – General Unsecured Claims shall be paid a pro rata share of disposable income after administrative and priority claims have been paid.

## PART 5: LIVING EXPENSES

The debtors' projection of annual living expenses is $25,000.00. The debtor shall limit his annual withdrawals for living expenses to said amount, unless said amount is modified by Court Order. The Court shall retain authority and jurisdiction to modify said allowance upon application of a party in interest.

## PART 6: COSTS OF ADMINISTRATION AND PROFESSIONAL FEES

### Class 1: Trustee Fees

Claims for compensation and expenses of professionals and court costs shall be paid upon approval by the Court and as directed by the Court. The Chapter 12 Trustee shall make application to the Court for approval of trustee's fee and for any reasonable and necessary expenses of the Trustee in effectuating the Trustee's duties under the Bankruptcy Code in administering this case. The debtors shall pay an amount equal to five percent (5%) of all payments disbursed by the Chapter 12 Trustee as an estimated payment and the Trustee shall hold the fee until the Trustee's fees and expenses are applied for and approved by the Court. Once the Trustee's fees are approved, the Trustee shall pay them. If there are excess funds in the account at the end of the case, the money shall be paid to the unsecured creditors and any excess after paying the unsecured creditors shall be paid to the debtors, unless otherwise ordered by the Court. **All payments shall be made through the Chapter 12 Trustee unless otherwise stated herein. Creditors shall only accept direct payments from the debtors if specified in the Plan.**

### Class 2: Debtor's Attorney's Fees:

Bulie Diaz Law Office will apply to the Court for compensation in this case at a rate of $225.00 per hour for attorney work, $75.00 for administrative work and reimbursement of costs and expenses incurred during the representation of the Debtor pre and post-petition. Upon approval of such compensation by the Court, the Debtor shall make an annual payment for the remaining fees owed (after application of the Debtor's pre-petition retainer) to the Chapter 12 Trustee on or before May 30, 2021. Additional fee applications that are approved after May 30, 2021, must be paid to the trustee on or before May 30th of the following year. The Debtor shall provide the additional funds as is necessary to provide for the Trustee's 5% fee when making these annual payments.

# PART 7: SECURED CLAIMS

**Class 1: Secured Claim of Unity Bank:**

The secured claim of Unity Bank (Unity) has a total balance of $443,391.61 as of May 14, 2020. This balance is reflected on Unity's proof of claim (POC#13). Prior to the Chapter 12 case filing, this claim was secured by chattel, livestock and the following homestead real property in Otter Tail County, Minnesota:

> Parcel #36000020012000
> Legal: SE1/4 of the NW 1/4 of Section 2 in Township 131, Range 39, Ottertail County, Minnesota

After the Court's order lifting stay entered March 11, 2020, Unity liquidated cattle and chattel of the Debtor. The remaining balance as of May 14, 2020 is the balance after credit for the various sales. It is the Debtor's position that the sole remaining asset secured by this claim is the homestead real property.

The Debtor ordered an appraisal of the homestead property, which was completed on May 8, 2020. The valuation based on this independent appraisal was $320,000.00. A full copy of the appraisal is available upon request from Debtor counsel. Unity Bank conducted its own appraisal in September 2020, which valued the real estate at $328,000.00.

The secured claim of Unity is **impaired**. As of the date of confirmation, this secured claim shall be valued at $328,000.00 plus $10,000 of attorney's fees. This claim shall be amortized over 25 years at a fixed rate of 5.25% with a final balloon payment due in 7 years.

| Payment Due Date | Payment Amount: | Paid to: |
|---|---|---|
| September 15, 2021 | $24,586.34 | Chapter 12 Trustee |
| September 15, 2022 | $24,586.34 | Chapter 12 Trustee |
| September 15, 2023 | $24,586.34 | Chapter 12 Trustee |
| September 15, 2024 | $24,586.34 | Chapter 12 Trustee |
| September 15, 2025 | $24,586.34 | Chapter 12 Trustee |
| September 15, 2026 | $24,586.34 | Unity Bank |
| September 15, 2027 | Balloon Payment, Estimated: $287,726.27 | Unity Bank |

The Debtor will work to sell or refinance the property to either pay this secured claim in full on or before the balloon payment due in 2027. The Debtor may prepay this secured claim in full without penalty. The remaining unsecured claim of Unity shall be paid pursuant to Part 9, Class 1 of this Plan.

Pursuant to 11 U.S.C. § 552, any equipment, machinery, livestock, or other farm products grown, paid for on the Debtor's behalf or purchased by the Debtor after the March 6, 2020 filing of the Chapter 12 Bankruptcy Case, shall not be subject to Unity Bank's U.C.C. Financing Statement or security agreements. Unity Bank shall release and/or endorse over any post-petition sales checks to the Debtor for use in his operation and to fund this Chapter 12 plan.

Unity shall retain its mortgage in the Debtor's real estate until its secured claim is paid in full pursuant to the plan.

In the event of default under the terms and conditions of this Plan (including, but not limited to, payment default), Unity Bank or Unity Bank's counsel may notify Debtor of the default by email to counsel of Debtor, sara@bulielaw.com and to Debtor individually at jejohnson473@gmail.com. If any default is not cured within twenty days of providing notice to Debtor, Unity Bank may file an affidavit of non-compliance requesting entry of an order granting relief from the automatic stay of 11 U.S.C. § 362(a) or dismissal of the Debtor's case so that Unity Bank may record deed(s)-in-lieu and enforce a Voluntary Surrender Agreement that the Debtor executed and delivered to Unity Bank.

Within seven calendar days of the filing of the affidavit of non-compliance, the Debtor may object solely on the basis that any default has been cured. The Debtor may cure at any time up until the end of the seven-calendar day period immediately following the filing of the affidavit of non-compliance. If the Debtor objects on the basis that default has been cured, an evidentiary hearing shall be set on the first available date. If no objection is filed within seven calendar days of the filing of the affidavit of non-compliance, the Debtor stipulates and agrees that the uncured event of default constitutes "cause" (i) to grant relief from the automatic stay without further hearing. or (ii) to dismiss the Debtor's case. Debtor consents to the Court granting the relief requested by Unity Bank.

In the event that Debtor moves this Court to modify this Plan pursuant to 11 U.S.C. § 1229 and seeks to modify Unity Bank's claim in any way, Unity Bank may file an affidavit of non-compliance seeking entry of an order granting relief from the automatic stay of 11 U.S.C. § 362(a) without serving a notice of default and without any cure period. The Debtor stipulates and agrees that making a motion in this case to modify the Plan to modify Unity Bank's claim constitutes "cause" to grant Unity Bank relief from the automatic stay without further hearing and Debtor consents to the Court granting the requested relief. Modifications to the Plan that do not change the claim treatment of Unity Bank shall not be subject to the default provisions in this paragraph.

In the event that this case is either voluntarily or involuntarily converted to a case under chapter 7 of the Bankruptcy Code prior to the satisfaction of Unity Bank's secured claim as provided in the Confirmed Plan, Unity Bank may file an affidavit of non-compliance seeking entry of an order granting relief from the automatic stay of 11 U.S.C. § 362(a) without serving a notice of default and without any cure period. The Debtor stipulates and agrees that the conversion of this case to a case under chapter 7 constitutes "cause" to grant relief from the automatic stay without further hearing and the Debtor consents to the Court granting the relief requested by Unity Bank if its claim is not satisfied pursuant to the Plan at the time of conversion.

In the event the above captioned case is either voluntarily or involuntarily dismissed, Unity Bank may record the deeds-in-lieu and enforce the Voluntary Surrender Agreement immediately upon dismissal. In the event the Debtor files a subsequent bankruptcy petition under any chapter after either a voluntary or involuntary dismissal, the Debtor stipulates and agrees that Unity Bank may be granted relief from the automatic stay of 11 U.S.C. § 362(a) on an ex parte basis by filing an affidavit of non-compliance citing this paragraph (x) so that Unity Bank may record and enforce the deeds-in-lieu and Voluntary Surrender Agreement executed by Debtor. In the event the Debtor files a subsequent bankruptcy petition (the "Third Bankruptcy") under chapters 11, 12, or 13, the trustee or Unity Bank may file an immediate motion to dismiss the Third Bankruptcy with prejudice requesting the Debtor be prohibited from later filing a subsequent bankruptcy petition for six months. The Debtor stipulates and agrees that the act of filing the Third Bankruptcy petition shall

constitute "cause" to dismiss the Third Bankruptcy and, furthermore, the Debtor consents to the Court granting the requested relief (including the prohibition on re-filing a bankruptcy petition for six months) and dismissing the Third Bankruptcy with prejudice.

To the extent that the Voluntary Surrender Agreement (the terms of which are incorporated herein by reference) or deeds in lieu contemplated in this Plan have yet to be executed as of the effective date of the Plan or need to be supplemented or amended after plan confirmation in order to include all of the collateral that secures the claims of Unity Bank, the Debtor shall execute and deliver any additional or Amended Voluntary Surrender Agreement or deed in lieu within five business days of receiving such a request from Unity Bank.

Debtor agrees to maintain a homeowner's policy of insurance naming Unity Bank as an insured. Debtor agrees to supply Unity Bank with a copy of the insurance policy at Unity Bank's request. In the event that Debtor either allows the homeowner's policy of insurance to lapse or fails to provide Unity Bank with a copy of the policy within ten days of Unity Bank's request for a copy, Unity Bank may file an affidavit of non-compliance seeking entry of an order granting relief from the automatic stay of 11 U.S.C. § 362(a) without serving a notice of default and without any cure period. The Debtor stipulates and agrees that failing to maintain a homeowner's policy of insurance naming Unity Bank as an insured constitutes "cause" to grant Unity Bank relief from the automatic stay without further hearing and Debtor consents to the Court granting the requested relief.

**Upon full payment of this claim on or before March 15, 2027:**
**(a) Unity shall release all mortgages of record.**
**(b) Unity shall release all UCC, CNS, and any other pre-petition lien documents or recordings.**
**(c) Unity shall withdraw and/or release Notices of Lis Pendens of recording, if any; and**
**(d) Unity and the Debtor shall stipulate to dismiss Otter Tail County District Court Case #56-CV-18-1787 with prejudice.**

**Class 2: Secured Claim of State Farm Bank, FSB:**

Class 2 is the secured claim of State Farm Bank, FSB (SFB) based on their proof of claim (POC#3) balance of $40,077.06. This claim secures the purchase of a 2017 Ford F350 Super Duty Truck, VIN ending #7863, "Ford". The Ford is valued in the Debtor's schedules as $36,237.00, but the value was overstated and should be reflected as $28,900.00 considering its high mileage. This Class is **impaired**. SFB shall retain its lien.

As of the date of confirmation, this secured claim shall be valued at $36,237.00. This claim shall be amortized at 5.25% for a period of 5 years.

| Payment Due Date | Payment Amount: |
|---|---|
| November 15, 2021 | $6,721.37 |
| November 15, 2022 | $6,721.37 |
| November 15, 2023 | $6,721.37 |
| November 15, 2024 | $6,721.37 |
| November 15, 2025 | $6,721.37 |

Debtor shall keep the motor vehicle sufficiently insured pursuant to the original contract. Upon final payment of the total claim, SFB shall release all liens and encumbrances of record.
The Debtor may prepay this claim without penalty. Any remaining unsecured claim shall be paid pursuant to Part 9, Class 1 of this Plan. Upon payment of this claim pursuant to the plan, SFB shall release its UCC liens and any related encumbrances of record.

**Class 3: Secured Claim of Everto Investment Group, LLC**

Class 3 is the secured claim of Everto Investment Group, LLC, aka Currency Capital, LLC, "Everto". Everto's claim is secured by a 1958 John Deere 320 Slant Steer valued at $8,000.00 in the Debtor's schedules. The balance of the claim of Everto is $8,908.02 based on their proof of claim. (POC#6). This class is **impaired.** Everto shall retain its lien.

As of the date of confirmation, this secured claim shall be valued at $8,000.00. This claim shall be amortized at 5.25% for a period of 5 years.
The following payments shall be made to the Chapter 12 Trustee:

| Payment Due Date | Payment Amount: |
|---|---|
| November 15, 2021 | $1,860.59 |
| November 15, 2022 | $1,860.59 |
| November 15, 2023 | $1,860.59 |
| November 15, 2024 | $1,860.59 |
| November 15, 2025 | $1,860.59 |

The Debtor may prepay this claim without penalty. Any remaining unsecured claim shall be paid pursuant to Part 9, Class 1 of this Plan. Upon payment of this claim pursuant to the plan, Everto shall release its UCC liens and any related encumbrances of record.

**Class 4: Secured Claim of Financial Pacific Leasing, Inc.**

Class 4 is the fully secured claim of Financial Pacific Leasing, Inc. "FPL". FPL's claim is secured by a John Deere 644E Front End Loader, serial ending #7376. This asset is listed with the purchase price value of $30,000.00 in the Debtor's schedules. Debtor estimates the fair market value of the asset is $21,000.00. The balance of the claim of FPL is $27,209.76 based on the proof of claim filed in Mr. Johnson's prior Chapter 12 case. A proof of claim has not been filed in this case. This class is **impaired.** FPL shall retain its lien.

As of the date of confirmation, this secured claim shall be valued at $21,000.00. This claim shall be amortized at 5.25% for a period of 5 years.

| Payment Due Date | Payment Amount: |
|---|---|
| November 15, 2021 | $4,884.04 |
| November 15, 2022 | $4,884.04 |
| November 15, 2023 | $4,884.04 |
| November 15, 2024 | $4,884.04 |
| November 15, 2025 | $4,884.04 |

The Debtor may prepay this claim without penalty. Any remaining unsecured claim shall be paid pursuant to Part 9, Class 1 of this Plan. Upon payment of this claim pursuant to the plan, FPL shall

release its UCC liens and any related encumbrances of record.

## PART 8: PRIORITY AND ADMINISTRATIVE CLAIMS

### NONE

## PART 9: GENERAL UNSECURED CLAIMS

**Class 1.** Class 1 consists of allowed general unsecured claims, allowed general unsecured claims of creditors which are as a result of damages arising as a result of the rejection of unexpired leases and/or executory agreements, allowed general unsecured claims resulting from the value of a secured claim being of a value less than the security held against held claim, and/or those secured creditors whose claims are determined to be unsecured, allowed general unsecured claims of all accommodation parties and co-makers or loans of which the debtors are the principal, allowed governmental claims arising under 11 U.S.C. § 1232, and allowed general unsecured claims for taxes and penalties which are not included in any other Class. Payments made to this Class shall be disbursed by the Trustee pro-rata. Nothing in this Part shall restrict the debtor, Trustee, or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance of a claim.

The Liquidation Value of the Debtor's property, as reflected in the attached Liquidation Analysis, is $20,729.62. Debtor shall pay no less than $20,729.62 towards these claims pursuant to this plan. Payments made to this Class shall be disbursed by the Trustee pro-rata.

| Payment Due Date | Payment Amount: |
|---|---|
| November 15, 2021 | $4,145.92 |
| November 15, 2022 | $4,145.92 |
| November 15, 2023 | $4,145.92 |
| November 15, 2024 | $4,145.92 |
| November 15, 2024 | $4,145.92 |

## PART 10: 11 U.S.C. § 1232 GOVERNMENTAL CLAIMS

Governmental claims arising under 11 U.S.C. § 1232 (1) shall be treated as general unsecured claims arising before the date on which the petition is filed; (2) shall not be entitled to priority under section 507; (3) shall be included and receive pro rata treatment under Part 9 (General Unsecured Claims) of the plan, provided that the claim is not otherwise disallowed, and (4) shall be discharged in accordance with 11 U.S.C. §§ 1228 & 1232. If the debtor files a tax return after the filing of the petition for a period in which a claim described in subsection (a) arises, and the claim relates to the tax return, the debtor shall serve notice of the claim pursuant to 11 U.S.C. § 1232(d)(2). Nothing in this Part shall restrict the debtor, Trustee, or other party from objecting under Fed. R. Bankr. P. 3007 to the allowance of a claim.

## `PART 11: EXECUTORY CONTRACTS AND LEASES

Part 11 consists of executory contracts and leases existing as of the date of filing. All such executory contracts and leases are rejected unless specifically assumed in this Part.

**Class 1: Debtor assumes all pre-petition oral contracts for pastureland.**

## PART 12: EXECUTION OF PLAN AND CASH FLOW ANALYSIS

The debtor proposes to re-grow his livestock operation and make plan payments out of farm or other off farm income, including but not limited to trucking and custom farm work. Cattle has been purchased post-petition by family members assisting the Debtor with restarting his operation. The debtor's projections of income, operating expenses, and plan payments are attached as Exhibit B.

## PART 13: RETENTION OF LIENS AND INCORPORATION OF DOCUMENTS

All creditors whose claims are treated as secured in this plan shall retain their liens on the collateral securing their respective claims as specified in the plan and until such claims are paid in full in the amount allowed as secured. Except as modified by the terms of this plan, all documents evidencing indebtedness and security in favor of said secured creditors remain the same and are incorporated herein by reference. This plan and Order confirming the plan shall constitute a modification of the terms and conditions of said instruments as set forth herein. Either the debtor or any creditor may record this plan and the Order confirming this plan with the Office of the County Recorder of each county in which the debtor have an interest in real estate without violation of the automatic stay.

## PART 14: GENERAL PROVISIONS

1. The Court shall retain jurisdiction over the debtor and his property for the term of the plan.

2. Property of the estate vests upon dismissal, conversion, or completion of plan payments due during the term of the plan.

3. As part of the continuing farm operation, the debtor shall submit operating reports and bank statements on a monthly basis to the Chapter 12 Trustee. The debtor shall provide the Chapter 12 Trustee copies of tax returns annually once filed.

4. The Debtor may request the Court to modify this Plan before or after confirmation in accordance with the provisions of 11 U.S.C. Section 1222 or Section 1229.

5. The Debtor shall move the Court for authorization prior to any sale or purchase of assets, pursuant to 11 U.S.C. §1206, U.S.C. 11 U.S.C. § 363(b) and/or 363(f).

6. In addition, the Debtor shall not incur debt out of the ordinary course of business without moving the Court for authorization pursuant to 11 U.S.C. §364(b).

Dated: Jan 21, 2021

Dated: January 21, 2021


Jeff Johnson (Jan 21, 2021 09:46 CST)
Jeffrey Johnson

/e/ SARA E. DIAZ
Sara E. Diaz
MN License #0394832
BULIE DIAZ LAW OFFICE
1790 32nd Ave. S. Suite 2B
Fargo, ND 58103
sara@bulielaw.com
(701) 298-8748
Attorneys for the Debtor

Liquidation Analysis
Pursuant to 11 USC §1225 (a)(4)

| Description of Asset: | Value: | Secured Claim(s) | Net Asset Value | Exemptions Claimed | Liquidation Value |
|---|---|---|---|---|---|
| **Real Estate:** | | | | | |
| Schedule A/B Line 1.1 15603 County Highway 57 | $ 320,000.00 | $ 443,391.61 | $ (123,391.61) | $ - | $ - |
| **Motor Vehicles; Recreational Assets; Assets used in Business** | | | | | |
| 2017 Ford F350 Super Duty Crew | $ 28,900.00 | $ 40,077.06 | $ (11,177.06) | $ - | $ - |
| **Household assets:** | | | | | |
| Household Goods & Furnishings as Scheduled | $ 5,010.00 | $ - | $ 5,010.00 | $ 5,010.00 | $ - |
| Electronics: TV, etc. as scheduled | $ 1,000.00 | $ - | $ 1,000.00 | $ 1,000.00 | $ - |
| Dog | $ 1.00 | $ - | $ 1.00 | $ 1.00 | $ - |
| Clothing | $ 500.00 | $ - | $ 500.00 | $ 500.00 | $ - |
| Jewelry- Wedding Rings | $ 150.00 | $ - | $ 150.00 | $ 150.00 | $ - |
| Lawn Mower, weed wacker (Electric) | $ 110.00 | $ - | $ 110.00 | $ 110.00 | $ - |
| (10) Rifles: Remington, Winchester, Browning | $ 2,000.00 | $ - | $ 2,000.00 | $ 2,000.00 | $ - |
| **Financial assets:** | | | | | |
| Cash on Hand | $ 100.00 | $ - | $ 100.00 | $ 100.00 | $ - |
| **Business Related** | | | | | |
| Battle Lake Oasis, LLC - value based on Property Tax Value, less liens/debts | $ 28,000.00 | $ - | $ 28,000.00 | $ 11,633.76 | $ 16,366.24 |
| **Farm-Related** | | | | | |
| John Deere 320 U Slant Steer | $ 8,000.00 | $ 11,104.50 | $ (3,104.50) | $ - | $ - |
| John Deere 644E Front End Loader S/N: DW644ED517376* | $ 21,000.00 | $ 27,209.76 | $ (6,209.76) | | $ - |
| | | | | **LIQUIDATION VALUE:** | $ 16,366.24 |
| | | | Transfer of Value in Boat to Father within 2 years | | $ 7,500.00 |
| | | | | *Total Liquidation/Estate Value* | $ 23,866.24 |
| | | | | Less Chapter 7 Liquidation Fees | $ 3,136.62 |
| | | | | **FINAL LIQUIDATION VALUE:** | $ 20,729.62 |

# EXHIBIT B: Chapter 12 Plan
## Cash Flow Statement - Year 2021

| *Revenue:* | | | |
|---|---|---|---|
| Cattle Sales (price per head: Approx $1,000/each), 25 head sold | $ 25,000.00 | | |
| Net Wage Income, Mark Lee Excavating | $ 53,000.00 | | |
| | **TOTAL REVENUE:** | **$** | **78,000.00** |

| *Expenses for Farming Operation:* | | | |
|---|---|---|---|
| Feed | $ 5,000.00 | | |
| Veterinary Expenses | $ 500.00 | | |
| Fuel Expenses | $ 500.00 | | |
| *Total Expenses for Farming Operation:* | | **$** | **6,000.00** |
| **ESTIMATED NET INCOME FROM OPERATION:** | | **$** | **72,000.00** |

| *Household expenses:* | | | |
|---|---|---|---|
| Household expenses: | | **$** | **25,000.00** |

| *Payments to Secured Creditors:* | Class #: | Paid To: | | |
|---|---|---|---|---|
| Unity Bank Mortgage | 1 | $ 24,586.34 | Trustee | |
| State Farm Bank - 2017 Ford F350 Pickup | 2 | $ 6,721.37 | Trustee | |
| Enverto Investment - JD 320U | 3 | $ 1,860.59 | Trustee | |
| Financial Pacific Leasing - JD 644E Front End Loader | 4 | $ 4,884.04 | Trustee | |
| | | **Total Secured Creditor Payments:** | **$** | **38,052.34** |

| *Payments to Administrative Creditors/Attorneys* | | | |
|---|---|---|---|
| Chapter 12 Trustee Fees, estimated | | $ | 2,109.91 |

| *Payments to Unsecured Creditors* | | | |
|---|---|---|---|
| Unsecured Creditors: | | $ | 4,145.92 |
| **TOTAL EXPENSES:** | | **$** | **69,308.18** |
| **ESTIMATED NET INCOME:** | | **$** | **2,691.82** |

# 2nd Modified Plan; Johnson

Final Audit Report                                                              2021-01-21

| | |
|---|---|
| Created: | 2021-01-21 |
| By: | Sara Diaz (sara@bulielaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAp0VEPhu61gaAhALbRvqGvlSd_3ymMEgn |

## "2nd Modified Plan; Johnson" History

- **Document created by Sara Diaz (sara@bulielaw.com)**
  2021-01-21 - 1:45:02 PM GMT- IP address: 184.99.139.148

- **Document emailed to Jeff johnson (jejohnson473@gmail.com) for signature**
  2021-01-21 - 1:45:52 PM GMT

- **Email viewed by Jeff johnson (jejohnson473@gmail.com)**
  2021-01-21 - 2:07:48 PM GMT- IP address: 74.125.212.13

- **Document e-signed by Jeff johnson (jejohnson473@gmail.com)**
  Signature Date: 2021-01-21 - 3:46:39 PM GMT - Time Source: server- IP address: 107.77.207.5

- **Agreement completed.**
  2021-01-21 - 3:46:39 PM GMT

Adobe Sign